This is a case that we held over from a previous calendar. This panel, it's Christopher Moore v. United States. Counsel, you may proceed. Thank you. Good morning, Your Honor, and may it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of Christopher Moore. The District Court erred in denying Moore's motion to vacate his Section 924C conviction for discharging a firearm during and in relation to a crime of violence, namely murder in aid of racketeering. Under the Supreme Court's intervening decisions in Davis and Borden, to qualify as a Section 924C crime of violence, an offense must have as an element the intentional use of violent physical force. But the federal offense of murder in aid of racketeering sweeps more broadly than that because it encompasses reckless murders and felony murders. But wasn't this decided in Scott? Is there anything left for you after the Scott and Bank decision? Yes, Your Honor. Scott 2, as you call it? So, Your Honor, I'll concede that an intentional murder under New York law satisfies the elements clause under Scott. It's our position, however, that the federal offense of murder in aid of racketeering encompasses more than just intentional murder. It encompasses reckless murder and felony murder, neither of which would satisfy the elements clause in light of Borden. But under the indictment in this case, Moore could not have been convicted if the government had proven only felony murder or highly reckless murder. Isn't that right? I agree that the jury in this case found that Moore had committed intentional murder. However, the antecedent question before this Court is whether the federal offense of murder in aid of racketeering is divisible. If this Court determines that it's indivisible, then the particular factual means by which Moore committed the murder— Yes, but this is more than factual means. This isn't something where we have to look at the evidence and see what we think the government proved. The indictment charges specifically intentional murder under Subsection 1 of the New York Penal Law of Murder. The jury was so instructed, right? Yes. So the jury made a finding. There's no way that under this indictment, Moore could have been convicted of anything else. So in this sense, Judge Lynch, I think it's not materially different from a situation where—just take the statute that was at issue in this Court's decision in Harbin, which criminalized the sale of a controlled substance. It's not materially different from a guilty plea colloquy where the defendant admits to selling cocaine, which is not an during his guilty plea colloquy. So it could be said with certainty that as a factual matter, Harbin sold cocaine in the same way that it can be said as a factual matter that the jury found Moore to have committed intentional murder. Suppose that New York State defined murder only as is defined in Subsection 1. But of course there are other states where murder is defined more broadly. Would you still take the position that the federal murder in aid of racketeering statute is indivisible and therefore the fact that it could let someone in New Jersey, say, be convicted of felony murder in aid of racketeering, what New York's definition is, is irrelevant? No. I think to satisfy the federal definition of murder in aid of racketeering, two things must be true. One, the offense conduct must qualify as generic murder, that is to say an unlawful killing with malice of forethought. And two, it must be in violation of the laws of a state. But New York's murder statute is divisible, isn't it? I agree that the New York State murder statute is divisible, but that's of course not the question before this court. The question before this court is the divisibility of the federal murder in aid of racketeering statute, and specifically the murder element of that statute. And I think there are three reasons why the federal murder element is indivisible, and they all flow from this court's decision in Harbin. First is the statutory text. The text refers to, quote, murder, simpliciter, without any indication that the specific state law variants of murder are distinct offenses or alternative elements. But it does say murder in violation of state law. That's true. And it's true that the Vicar statute requires a murder to violate state law, but it doesn't specify that it must violate state law in a distinct way or that the particular means by which state law was violated is something on which a jury must agree unanimously. But in New York, again, it is, New York's is divisible. So I'm having a little trouble following why, again, if New York had a simple definition that murder is intentional murder and subdivisions two and three were relegated to something called manslaughter, aren't you saying that that still wouldn't matter because the federal statute allows for prosecutions in the right state, under the right state law, it would be for non-intentional murder? So to be clear, I think it's clear from the Supreme Court's decision in Nardello that if New York called reckless murder and felony murder manslaughter, that would be immaterial to the federal law analysis. But let me say two more things about why I think the statute is indivisible. Number two, the penalty provisions of the federal murder in aid of racketeering statute are the same regardless of the specific state law variant committed. That is to say a defendant convicted of Vicar murder intentionally or recklessly would face the same federal law penalty. And I think our best point is this court's case law, beginning with Begarich and continuing through Diaz, that has said time and time again that the state law elements of Vicar predicates need not be charged to the jury. The jury can, in the district judge's discretion. But they were charged here, weren't they? I'm sorry, Your Honor? But they were charged in this case. I agree they were charged in this case, but it's our view that if this in aid of racketeering statute is indivisible, the fact the jury found them in this case would carry no weight in the categorical analysis. How do you deal with Carrillo? I mean, isn't the reason that the government charged in the indictment the specific subsection of New York law? And the reason why the court did instruct the jury this way is because we told them to. So again, I want to be crystal clear about what Carrillo held. Carrillo held that the conviction in that case could be affirmed on harmless error grounds and declined to revisit the holdings in Begarich and Diaz. And that's why it was circulated to all the active judges of the panel, because it was a harmless error decision? I take the point, Your Honor. I take the point. But Carrillo also says that Begarich, quote, establishes the theoretical possibility that a district judge in her discretion may elect to provide a generic definition rather than charge the state law elements. And frankly, I'm at a loss as to how this court could understand offense elements in that way or describe charging offense elements as the preferred practice or the safer course or the best practice. If this court believed that the state law elements were offense elements of the federal crime, it could not have said those things. Charging the jury on federal law offense elements would be mandatory, not preferred. Well, maybe we should have an en banc and make that ruling, because it's a little hard for me to understand how it can be the case. I mean, other than the fact that the one consistency in this court's decisions in this area is we always affirm the convictions. It's hard for me to understand how Begarich and Diaz could possibly be right. So if I could suggest a factual scenario in which they can be and in which Begarich makes some sense, and it's a factual scenario not too far removed from this case, posit a state defendant, a gang member, who fires into a crowd of other gang members. And this is the example we provided in our supplemental brief. That's what Moore did, actually, personally, as opposed to what he may have aided and abetted. It's true. So again, to be, as Your Honor, I think, appears to have understood. He's convicted of aiding and abetting his co-defendant, Begarich, as his intentional murder, and that he himself fired into a house where an MS-13 bomb was fired. And fortunately, no one was killed. But your hypothetical is? Did he also kill Aguilar? Wasn't he the person that shot Aguilar? No, Your Honor. The co-defendant, Amadeo Rodriguez, was found personally liable for killing Aguilar, and Moore was convicted as an aider and abetter of that murder. But Judge Lynch, to pick up on the scenario, that defendant, and let's say it's unclear whether that defendant committed, intended to kill one of his targets, or was merely depravedly indifferent to the possibility that the death would result from his actions. If six jurors thought that he intended to kill, and six thought that he was just depravedly indifferent, all six could agree that the specific language of the federal statute had been satisfied. He had committed murder, as that term is generically understood, and he had done so in violation of the laws of New York State. But if the government is right, that defendant is not guilty. And I don't think that that's what Congress contemplated in defining murder in terms of state law violations. As long as the conduct is both generically murder and violates state law, as in my hypothetical, all 12 jurors agree, that's sufficient to prove a Vicar violation. In conclusion, your time is almost up. Yes, I'll reserve my time. Thank you, Your Honor. You've reserved two minutes for rebuttal. Thank you, counsel. We'll hear from the government. Thank you, Your Honor. I'm Lara Chinaskatz with the Appellee United States. Your Honors, Vicar murder is a crime of violence for 924C purposes, according to both the precedent of this circuit and a plain reading of the Vicar statute. In both Sierra and Pratty, this Court has held that Vicar murder predicated on New York State attempted murder and murder is a crime of violence. And recently in U.S. v. Scott, which we know was denied cert yesterday, this Court in Bank has reiterated specifically that Vicar murder predicated on New York State manslaughter and murder is a crime of violence. A plain reading of the Vicar statute supports this as well. It's a well-reasoned decision. In Carrillo, this Court found that both the text of RICO and Vicar demand that the predicate acts constitute state law crimes. And Vicar specifically includes its prohibition, only enumerated acts that are in violation of the laws of any state or the United States. The statute requires a predicate act based on state law to include the essential elements of a state crime. As Judge Lynch, you pointed out, Moore was indicted for intentional murder. The jury heard evidence of the trial that he committed aiding and abetting an intentional murder. He was a member of the Nietzsche's. He and his co-defendant, Amadeo Rodriguez, went to the house that evening to shoot those people because they were gang members of MS-13. It was a gang murder. Amadeo Rodriguez shot Giovanni Aguilar in the head and chest and killed him. This was always charged as an intentional murder. The jury heard evidence it was an intentional murder. The judge charged the jury on intentional murder. The jury returned a verdict on intentional murder. The first time we've ever heard this described as anything other than intentional murder is in the supplemental brief in 2021. This murder happened in 2001. Moore's argument would read those words specifically, predicate acts constituting state law crimes. His version of that statute would render that half of the statute superfluous. Those words about incorporating state law, totally superfluous. Vicar murder is a divisible offense requiring the use of the modified categorical approach to suss out the elements of the underlying conviction and in this case intentional murder. And counsel concedes that if we get there, it's an intentional murder and the 924C count remains. The various ways of committing vicar murder are elements of the offense, not means of committing the offense. Well, of course, that's not what we said in Diaz. With all due respect, I think that the court has suggested and I don't think it's inappropriate that maybe Diaz maybe needs to be revisited because this circuit has expressed and questioned and has in quote serious doubts about whether Diaz's holding can stand the test of time. So I think that with all due respect that back then they couldn't have imagined how the case law would unfold and here we're at a point where counsel for a defendant is arguing that a jury in a murder case shouldn't be given the state law and jury instructions on what the person actually did. They're actually, a defense lawyer is arguing that a jury shouldn't get more instructions from a judge that could potentially help a defendant. It sort of turns the argument on its head because you would think that under state law that some of the defendants might have state law defenses to the charges. This would seem to be something a defense lawyer would want. Well, it was something defense lawyers wanted in Vigarich and something defense lawyers wanted in Diaz and we told them no. Right? I mean, that's clearly exactly what we held in Vigarich was that it didn't matter that the judge didn't instruct the jury on what the elements of the state law were. Now, I mean, I suppose we could split the hair and say that Vigarich is a RICO case, not a Vicar case, but then there's Diaz and, you know, are you suggesting that what we need to do is to hold in this case that Diaz has not withstood the test of time and overrule it? I certainly don't want to suggest that, but I don't, I think that's for the court to decide, but I certainly suggest that the court has indicated in the Carrillo case that they don't, you don't believe it's going to stand the test of time. So I'll leave that to much wiser people than me, but what I will say, I mean, you can't just leave it right there. What would you have us say about Diaz? We can't write an opinion saying the case hasn't withstood the test of time that our colleagues wouldn't buy that. I think that in order to protect the rights of criminal defendants, the courts should require district judges to instruct juries on the state law crimes because it protects the defendants and the government has been following this court's lead. This court is, while deciding Diaz, you've had multiple decisions where you're telling the government and the district courts, charge the state law crimes. And we're listening and we did it in this case because of that case law. We shouldn't now be almost penalized in a way for doing that. We're following this court's instructions by instructing the jury. And frankly, it's, you would think in a case where someone's facing either life imprisonment or the death penalty, that the jury should have the instructions read to them that the state law crime that they may be very well convicting a defendant of. So I would just say that the circuit has questioned Diaz and has, and the quote, serious doubt, end quote, language is not mine, it's the circuit's language, that that holding may not be able to stand the test of time. So I would just suggest to the court, this may not be the case in which we do that because this case is on all fours an intentional murder case that the jury heard and convicted. So I don't know that this is the case that Diaz has to be revisited, but I would say that for this conviction, the 924 C count should stay. This court has repeatedly said that Vicar murder under New York state law. Because in this case, the indictment charged and the jury was instructed that the only way that this defendant could be convicted is if he was guilty of intentional murder under a specific New York statute. Yes. And I have nothing else to add unless anybody has any questions for me. Thank you, counsel. Thank you, Your Honor. Mr. Habib, you retain two minutes for rebuttal. Thank you, Your Honor. I want to make a few brief points. First, the government's own authorities in this case, in particular, Judge Glasser's opinion in Stone and the summary orders in Osborne and Sanchez, all described Diaz as good law. Indeed, the summary orders describe it as controlling authority. And all reach results adverse to the RICO defendants in those cases on the basis of Diaz. So Judge Parker, you're exactly right. For the government to prevail in this case would require this court to overrule not only Diaz, but a number of other cases along the same lines. And just to give the greatest hits, in Bogarich, this court held that a district court is not obliged to charge the state law elements. In Orena, 32 F3rd at 714, this court held that a RICO indictment does not need to allege the state law elements of the predicate crime of violence. In Miller, 116 F3rd at 675, this court said that RICO was not intended to incorporate the elements of the state law penal codes. And of course, in Diaz, this court held that proof of the state law elements, or rather that an instruction on the state law elements, was not required. So it would be necessary for this court to revisit all of those precedents. And Judge Lynch, if I may, I understand, and I can see that in this case, the jury was required to find an intentional murder. But I submit that it's no different from a situation in, say, when it was clear that in order for Shepard to plead guilty in Massachusetts state court, he had to allocute to burglarizing a house and not a boat, and that there was no other theory of, or no other factual basis on which that guilty plea could be sustained. Similarly, in Harbin, it was clear from the defendant's own admission that he had sold cocaine, not an overbroad drug. The analysis isn't what we can say with confidence as a factual matter the defendant did, but whether those factual allegations are integral to the proof or extraneous. And if the statute is indivisible, they're extraneous and disregarded under Decomf and this court's decision in Beardsley. Thank you, counsel. Thank you both. Can I say, I'm sorry, can I say one quick question? Of course. So what we're fighting over, in fact, in this case is how many posthumous years will Moore be required to serve? So in this case, Moore is subject to mandatory life on count one. I would note the case isn't moot, obviously, because of the special assessment. But in addition, Moore has a pending section 3582 motion in the district court in which he points out, among other things, that he was 20 years old at the time of this offense, that his childhood was indescribably horrible, and that his institutional record, since his incarceration, is quite strong. But he would still be eligible for that regardless of whether he's subject to life in prison or a life plus 10 years. Yes, but I think there's a marginal, it may make a marginal difference to the district court in terms of the aggregate length of sentence. I'm not suggesting that it's moot. I mean, it's a conviction that hangs over him. The government is fighting to keep it for whatever reason, and you're fighting to get it overturned. And there we are. I'm fighting to get it overturned. It is sort of strange that what we're talking about, already the government has conceded that apparently he doesn't have to serve 30 years after he's dead. But we're still fighting over the last 10. Well, so of course, this court appointed our office to brief and argue this question. So here we are. And I think I would also say that there may be some sort of marginal difference from the district court's vantage point between a sentence of life and a sentence of life plus additional time. And so I think it can't be said that it's insignificant. And if I could just say one last thing, Judge Lynch, it makes me think that if this court does what we're suggesting, that harm to the government's law enforcement interests will be de minimis. And that's because as long as they can prove a murder in aid of racketeering, they can secure mandatory life. So as in this case, the inability of the government to secure an additional 924C term would appear to be of little importance. Thank you. I'm going to ask the clerk to adjourn court. This court will reappear at 10 a.m. with the regularly scheduled panel. Thank you very much.